ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Dennis S. Ellis (State Bar No. 178196)
 dellis@egcfirm.com
Trent B. Copeland (State Bar No. 136890)
 tcopeland@egcfirm.com
Ryan Q. Keech (State Bar No. 280306)
 rkeech@egcfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

FRANK SIMS & STOLPER LLP
Jason Frank (State Bar No. 190957)
 jfrank@lawfss.com
Scott H. Sims (State Bar No. 234148)
 ssims@lawfss.com
Andrew D. Stolper (State Bar No. 205462)
 astolper@lawfss.com
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone: (949) 210-2400
Facsimile: (949) 201-2405
(Additional Counsel on Signature Page)

Attorneys for Plaintiffs Aaron Braxton,
Gia Gray, Bryan Brown, Paul Martin, on
behalf of themselves and all others
similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation,<br><br>Defendants. | Case No. 4:22-cv-01748-JD<br>*(Related to Case No. 3:22-cv-00990-JD)*<br><br>Honorable James Donato<br><br>**PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**<br><br>Date:        July 21, 2022<br>Time:        10:00 a.m.<br>Location:   Courtroom 11,<br>               United States Courthouse,<br>               450 Golden Avenue<br>               San Francisco. CA |

2068124.9

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      PRELIMINARY STATEMENT ...............................................................1

II.     FACTUAL BACKGROUND ....................................................................2

        A.      Procedural History ...........................................................................2

        B.      The *Braxton* Case is Vastly Different From the *Williams* Case ............4

III.    ARGUMENT .............................................................................................6

        A.      Legal Standard .................................................................................6

        B.      None of the First-Filed Factors Support Wells Fargo's Request
                for a Dismissal or Stay.......................................................................7

        C.      Wells Fargo's Motion is Clearly Aimed at Eliminating the Only
                Case Whose Class is Sufficiently Well-Defined to be Certified as
                a Class ...........................................................................................13

IV.     CONCLUSION ......................................................................................15

2068124.9

PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, STAY PROCEEDINGS

1

## FEDERAL CASES

*Adoma v. Univ. of Phoenix, Inc.*,
   711 F. Supp. 2d 1142 (E.D. Cal. 2010) ........................................................ 6, 12, 13

*Amavizca v. Nutra Mfg., LLC*,
   2020 WL 8837145 (C.D. Cal. Oct. 20, 2020) ..................................................... 12

*Amezquita v. Target Corp.*,
   2018 WL 6164293 (C.D. Cal. July 9, 2018) ...................................................... 12

*Andreoli v. Youngevity Int'l, Inc.*,
   2018 WL 1470264 (S.D. Cal. Mar. 23, 2018) .................................................... 12

*Barnes & Noble, Inc. v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) ............................................................... 1, 8

*Biosite, Inc. v. XOMA Ltd.*,
   168 F. Supp. 2d 1161, 1164 (N.D. Cal. 2001) ................................................... 12

*Beil v. Toyota Motor Sales, USA, Inc.*,
   2017 WL 10562859 (C.D. Cal. Dec. 4, 2017) .................................................... 12

*Bowles v. Leprino Foods Co.*,
   2020 WL 3256845 (E.D. Cal. June 16, 2020) .................................................... 12

*Cardenas v. Toyota Motor Corp.*,
   2019 WL 4705843 (S.D. Fla. September 26, 2019) ............................................ 10

*Dodd–Owens v. Kyphon, Inc.*,
   2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ....................................................... 13

*EEOC v. Univ. of Penn.*,
   850 F.2d 969 (3d Cir. 1988) .............................................................................. 8

*Emergy Inc. v. Better Meat Co.*,
   2022 WL 1665221 (E.D. Cal. May 25, 2022) .................................................... 12

*Gampala v. Dep't of Homeland Sec.*,
   2018 WL 4680182 (N.D. Cal. Sept. 28, 2018) .................................................. 12

*Gardner v. GC Servs., LP*,
   2010 WL 2721271 (S.D. Cal. July 6, 2010) ...................................................... 13

2068124.9

PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

1

## <u>TABLE OF AUTHORITIES</u>
(Continued)

2

<u>Page</u>

3

*Green Tree Servicing, L.L.C. v. Clayton*,

4

    689 F. App'x 363 (5th Cir. 2017) ................................................................. 11, 12

5

*Henderson v. JPMorgan Chase Bank*,

6

    2011 WL 4056004 (C.D. Cal. Sept. 13, 2011) .................................................. 12

7

*Lantiq N. Am., Inc. v. Ralink Tech. Corp.*,

    2011 WL 2600747 (N.D. Cal. June 30, 2011) ............................................. 11, 12

8

*Levay Brown v. AARP, Inc.*,

9

    2018 WL 5794456 (C.D. Cal. Nov. 2, 2018) .................................................... 12

10

*Martin v. Medicredit, Inc.*,

11

    No. 4:16-cv-01138, 2016 WL 6696068 (E.D. Mo. Nov. 15, 2016) .................. 2, 9

12

*Moore v. Roadway Express, Inc.*,

13

    2009 WL 10670954 (C.D. Cal. Oct. 7, 2009) .................................................. 12

14

*O'Connor v. Boeing N. Am., Inc.*,

15

    184 F.R.D. 311 (C.D. Cal. 1998) .................................................................... 13

16

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,

17

    678 F.2d 93 (9th Cir.1982) ............................................................................... 6

18

*Riley v. General Motors*,

    LLC, 2022 WL 787871 (S.D. Ohio Mar. 15, 2022) ..................................... 10, 11

19

20

*Rodriguez v. Taco Bell Corp.*,

    2013 WL 5877788 (E.D. Cal. Oct. 30, 2013) .................................................. 12

21

*Sheehy v. Santa Clara Valley Transportation Auth.*,

22

    2014 WL 2526968 (N.D. Cal. June 4, 2014) .............................................. 11, 12

23

*Smith v. S.E.C.*,

24

    129 F.3d 356 (6th Cir. 1997) .......................................................................... 10

25

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*,

26

    231 F. Supp. 3d 606 (E.D. Cal. 2017) ............................................................. 10

27

## <u>FEDERAL STATUTES</u>

28

42 U.S.C. § 1981 ................................................................................................ 5, 6

1

2

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

3

42 U.S.C. § 1982.......................................................................................................5, 6

4

## <u>RULES</u>

5

Rule 3-13..................................................................................................................4

6

Rule 23....................................................................................................................9

7

Rule 26..................................................................................................................14

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, STAY PROCEEDINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

This case (the *Braxton* action) concerns Wells Fargo's discrimination against Black homeowners seeking to ***refinance*** their home loans.  This is the *first case filed*—in this or any District Court—focused exclusively on Wells Fargo's discrimination in the ***refinancing*** process.  Discrimination in the refinancing process—as opposed to other credit scenarios—is unique, as the Black homeowners in this putative class were deemed to be creditworthy in connection with an existing home loan and were simply trying to lower their monthly payments, not obtain new credit.  Recognizing the strength of these refinance-specific claims, Wells Fargo is seeking to lump these plaintiffs together with a broader group of Black Americans who have various different grievances with Wells Fargo's credit practices.  Accordingly, Wells Fargo has pointed this Court to a supposed "first-filed action pending in this District" (the *Williams* action) that contains scant class allegations regarding the putative class in this case.  Wells Fargo's intent is clear: dilute the narrowly-focused and damaging refinance discrimination class action claims into a broader action with a lower likelihood of class certification or ultimate success on the merits.  In any event, application of the first-filed rule does not direct the stay or dismissal of this case.

*First*, *Williams* was not the first-filed refinancing case.  Applying the first-to-file rule in fact affirms that *Braxton* was the first-filed case addressing Wells Fargo's discrimination against Black homeowners seeking refinancing because ***Williams only included allegations about refinancing after the Braxton case was filed*** and Wells Fargo recognized that the cases were not previously related.  *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987 (N.D. Cal. 2011).  *Second*, the issues in *Braxton* and *Williams* are not substantially similar:  *Braxton's* factual allegations concern refinancing specifically and *Williams'* factual allegations concern various kinds of home loans generally.  Moreover, not only are the

defendant entities different (*Braxton* names an additional Wells Fargo entity), the characteristics of the plaintiff groups—and therefore the legal issues implicated by their claims—are wildly dissimilar. *See Martin v. Medicredit, Inc.*, No. 4:16-cv-01138, 2016 WL 6696068, at *4 (E.D. Mo. Nov. 15, 2016) (declining to apply first-filed rule to dissimilar classes across cases). The class of refinancing plaintiffs in *Braxton* is not the same as the vaguely-defined class of credit origination plaintiffs in *Williams*. Because *Braxton* involves plaintiffs who already had a home loan and sought to refinance that home loan at then-prevailing interest rates, they are differently situated than the *Williams* plaintiffs who had not yet obtained a mortgage. *Third*, applying the first-filed rule here would not serve the purposes underlying that rule: comity, efficiency, and uniformity. The cases are already before the same judge in the same District, not scattered across various jurisdictions. The cases have already been deemed related. This Court is well-empowered to manage these cases on its docket without wholly subsuming one into the other. *Finally*, the Court should be aware that animating Wells Fargo's motion is an apparent agreement between counsel for Wells Fargo and counsel for the *Williams* plaintiffs to situate the *Williams* counsel in a lead role.

Dismissing or staying this case would only serve to frustrate the *Braxton* plaintiffs' efforts to obtain justice. Wells Fargo would have the Court minimize plaintiffs' allegations—which are based not only on public documents but on extensive investigation and interviews by the *Braxton* plaintiffs' counsel—by burying the *Braxton* claims into the folds of the *Williams* case, thereby diluting the impact of Wells Fargo's discrimination in the refinancing process. The Court can and should avoid this injustice by properly applying the first-to-file rule and denying Wells Fargo's motion.

## II.   FACTUAL BACKGROUND

### A.   Procedural History

On February 17, 2022, a putative class action titled *Christopher Williams v.*

*Wells Fargo Bank, N.A. et al.,* No. 3:22-cv-00990-JD ("*Williams*") complaint was filed against Wells Fargo Bank, N.A and Wells Fargo & Company.  Declaration of Dennis S. Ellis ("Ellis Decl."), ¶ 2.  The *Williams* complaint sought to represent a class of Black Americans who applied for credit related to residential real estate and who were subjected to discrimination by Wells Fargo due to their race.  Ellis Decl., Ex. A, ¶ 19.  On March 18, 2022, Plaintiff Aaron Braxton filed the first putative class action in the Northern District of California against Wells Fargo N.A. and Wells Fargo Home Mortgage, Inc., on behalf of a class of Black homeowners who had submitted refinance applications to Wells Fargo and were harmed by Wells Fargo's race-based discrimination.  Ellis Decl., ¶ 3, Ex. B.

On April 7, 2022, counsel for the *Braxton* plaintiffs and Wells Fargo participated in an introductory call and discussed facilitating communication between the parties and the status of other cases against Wells Fargo relating to discrimination.  Ellis Decl., ¶ 7.  While there was generalized discussion about the possibility of relatedness among *Braxton* and the other cases that have been filed against Wells Fargo regarding discriminatory lending practices, during this call, there was no mention that Wells Fargo believed *Braxton* and *Williams* were related.[1]

On April 12, 2022, the *Braxton* plaintiffs filed their First Amended Complaint ("FAC").  Ellis Decl., Ex. C.  It specified, in detail, Wells Fargo's COVID-19 era refinancing application process and its increased reliance on algorithms and Wells Fargo's CORE automated underwriting system.  *Id*. ¶¶ 70-78.  The FAC alleged that Wells Fargo's automated underwriting system was increasingly infected with explicit and implicit racial signals (so-called "overlays") that had, as their proximate and likely result, the disparate impact reflected in the statistical analyses identified in the FAC.  *Id*. ¶¶ 79-91.  The FAC also drew on informants to describe Wells

---

[1] After that call, on April 11, 2022, Wells Fargo filed a Notice of Appearance and Notice of Interested Parties, and the parties stipulated to an extension of Wells Fargo's time to respond to the *Braxton* plaintiffs' complaint.  Dkts. 10-12.

1   Fargo's failure to control for discriminatory practices.  *Id.* ¶¶ 82, 91, 101 103-05.

2          On April 14, 2022, almost four weeks after the *Braxton* original complaint

3   was filed, the plaintiffs in *Williams* amended their complaint, to include, ***for the first***

4   ***time***, allegations relating to Wells Fargo's discriminatory conduct towards Black

5   refinancing applicants.  Ellis Decl., Ex. D.  The *Williams* FAC alleged without

6   identifying any specific practices that Wells Fargo "intentionally discriminates and

7   creates and unlawful disparate impact against Black and/or African American

8   mortgage applicants, including applicants for refinancing." *Id*. ¶ 24.  The *Williams*

9   class definition was even further expanded to include "a class of Black and/or

10  African American applicants or borrowers who applied for, received, or maintained

11  credit from Defendants related to residential real estate and who were subjected to

12  discrimination by Defendants due to their race." *Id*. ¶ 44.[2]

13         Significantly, Wells Fargo only filed a Notice of Related Case ***after*** the

14  *Williams* amendment.  Local Rule 3-13 required Wells Fargo to file a notice of

15  related case "promptly" if Wells Fargo believed the *Braxton* case involved "all or a

16  material part of the same subject matter and all or substantially all of the same

17  parties" as the *Williams* action.  Wells Fargo's failure to file a pre-amendment

18  Notice of Related Case shows that Wells Fargo did not believe the unamended

19  *Williams* and *Braxton* were related.  On May 25, 2022—over two months after filing

20  of the *Braxton* complaint and more than one month after *Williams* was amended to

21  add refinancing discrimination—Wells Fargo stated, for the first time, that it viewed

22  *Braxton* and *Williams* as related under the Local Rules.  Ellis Decl., Ex. H.

23         **B.     The *Braxton* Case is Vastly Different From the *Williams* Case**

24         **The factual allegations are distinct.**  With allegations limited to a three-year

25  period starting near the onset of the COVID-19 pandemic, the *Braxton* FAC

26  _____

27  [2] On April 18, 2022, Wells Fargo filed another certificate of interested parties as
    well as declination of consent to the Magistrate Judge, and the parties further filed a
28  stipulation regarding Wells Fargo's deadline to response to the FAC.  Dkts. 17-19.

identifies specific practices, policies, and racially infected algorithms and overlays that disparately impacted Black homeowners who sought to refinance with Wells Fargo.  At the heart of the Wells Fargo process challenged in *Braxton* is a new online mortgage application and associated tools.  Ellis Decl., Ex. C ¶¶ 70-77. *Braxton* details how Wells Fargo's online application and its loan officers collect data, including the development of racial signals through "overlays."  *Id.* ¶ 82-91. The FAC explains Wells Fargo's CORE algorithm, *id.* ¶¶ 78-80, pursuant to which the data collected from refinancing applicants is run through a Desktop Underwriter and Loan Prospector simultaneously.  Further, *Braxton* focuses on the manner in which Wells Fargo supervised (or failed to supervise) the operation of these data collection and review processes.  *Id.* ¶¶ 100-105.

The *Williams* matter, by contrast, is not trained on any specific programs, processes, or practices.  Rather, *Williams* runs through a gamut of practices, including plain allegations of red-lining and reverse red-lining.  Ellis Decl., Ex. D ¶¶ 5-20.  The *Williams* case also focuses on fees, costs, deferment policies, forbearance policies, default policies, foreclosure policies, credit points, and "other credit and contractual terms."  *Id.* ¶ 23.  *Williams* then loosely combines these practices and asserts a class based on all African American or Black American "credit" customers who have suffered from any of these forms of discrimination.  *Id.* ¶ 61.  *Williams* does not list in its class definitions any credit products that may have been effected.

**The legal issues are different.**  The *Braxton* Complaint brings three causes of action pursuant to federal statutes: violation of the Equal Credit Opportunity Act, race discrimination in violation of the Fair Housing Act of 1968, and race discrimination in violation of 42 U.S.C. § 1981. Ellis Decl., Ex. C ¶¶ 166-84.  The *Braxton* complaint, with California plaintiffs, also brings claims under the California Unruh Civil Rights Act and California's Unfair Competition Law.  *Id.* ¶¶ 185-98. On the other hand, the *Williams* Complaint, whose plaintiffs do not reside in California, is limited to federal statutes: the Equal Credit Opportunity Act, 42

U.S.C. §§ 1981 and 1982, and the Fair Housing Act of 1968.

**The parties do not completely overlap.**  Because of its overbroad class definition and wide-ranging factual allegations, the *Williams* Complaint encompasses a much broader group of plaintiffs than *Braxton*.  The *Braxton* potential class is "all Black homeowners in the United States who, from January 1, 2018 through the present (the "Class Period"), submitted an application to refinance their home mortgage through Defendants that was (i) processed at a rate slower than that of the average processing time of applications made by non-Black applicants; or (ii) whose applications were denied; or (iii) whose resulting refinance loans were made at higher interest rates as compared to similarly situated non-Black applicants," Ellis Decl., Ex. C ¶ 146, while the *Williams* class includes "Black and/or African American applicants or borrowers who applied for, received, or maintained credit from Defendants related to residential real estate and who were subjected to discrimination by Defendants due to their race."  Ellis Decl., Ex. D ¶ 44.  The putative class as defined in *Williams* would encompass all applicants who sought any type of loan related to any residential property at any time.  The *Braxton* class specifically lists ***discrimination in refinancing*** (and has the well-researched and investigated allegations to support those claims) as its only issue of concern.

## III.   ARGUMENT

### A.   Legal Standard

"The 'first-to-file rule' is a doctrine of federal comity that permits a district court to decline jurisdiction over an action 'when a complaint involving the same parties and issues has already been filed [.]'"  *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir.1982)).  Courts analyze three factors when deciding whether to apply the first-filed rule: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Id.* (quotation omitted).  If the factors are met, "the court has the discretion to transfer,

1  stay, or dismiss the action." *Id.*  Even when the factors are met, however, "[t]he

2  district court retains the discretion to disregard the first-to-file rule." *Id.*

3  **B.      None of the First-Filed Factors Support Wells Fargo's Request for**

4  **a Dismissal or Stay**

5  None of the first-filed factors support the drastic relief Wells Fargo seeks.

6  *Williams* not the first-in-time refinancing case, nor is *Williams* even properly

7  characterized as a refinancing case.  The *Braxton* refinancing plaintiffs, and the legal

8  and factual issues raised by their claims, differ so fundamentally from the broad-

9  brush credit origination allegations in the *Williams* case that the relief sought by

10  Wells Fargo would not only decrease judicial efficiency but, indeed, would run

11  contrary to the interests of Black refinancing plaintiffs.

12  ***Williams* was not the first-filed refinancing case.**  Wells Fargo argues that

13  the chronology of *Braxton* and *Williams* "plainly favors application of the first-to-

14  file rule" because *Williams*, they allege, "is a previously filed" refinancing action.

15  Mot., at 5.  *Williams* is no such thing.  On March 18, 2022, Aaron Braxton, on

16  behalf of himself and others similarly situated, brought claims against Wells Fargo

17  concerning its discrimination of Black homeowners seeking to refinance existing

18  home loans.  Ellis Decl., Ex. C.  At that time, no action was pending in the Northern

19  District of California—or, for that matter, in any other federal district—***related to***

20  ***Wells Fargo's racial discrimination in refinancing***.  As of March 18, Christopher

21  Williams, on behalf of himself and others similarly situated, had filed a complaint

22  alleging generalized claims against Wells Fargo concerning discrimination against

23  Black Americans in home mortgage origination—what *Williams* termed "credit

24  related to residential real estate"—and sought class treatment on that basis without

25  making a single mention of refinancing.  Ellis Decl., Ex. A, ¶ 19.

26  It took the *Williams* plaintiffs more than a month after Mr. Braxton filed his

27  complaint to amend their original complaint to add some thin allegations about

28  refinancing, plainly in response to the *Braxton* complaint's detailed allegations.

1  Ellis Decl., Ex. D.  The added allegations about refinancing were, although sparse,

2  the clear purpose of the amendment.  *Id*. ¶ 24.

3      The two cases were not even conceivably related before the amendment in

4  *Williams*.  Wells Fargo's conduct is consistent with this understanding.  Wells Fargo

5  did not move to relate this case and *Williams* for over two months after the *Braxton*

6  case was filed.  Wells Fargo did not suggest relating this case to *Williams* when the

7  parties first conferred.  Ellis Decl., ¶ 7.  It was only after the *Williams* amendment

8  that the *Braxton* and *Williams* cases even had any superficial similarities.

9      If the Court were to determine that *Williams* is the first-filed refinancing case

10  based on those superficial similarities, then the sparse *Williams* refinancing

11  allegations would sweep aside the detailed and well-investigated refinance

12  allegations set forth in the original and amended *Braxton* complaints, to the

13  prejudice of the narrow scope of the potential class members in *Braxton*.  Simply

14  put, *Williams*' bare-bones amendment cannot and should not be allowed to

15  supersede (and protect Wells Fargo from) the detailed and damaging allegations in

16  *Braxton*, a wholly different case.  Doing so would be inconsistent with the purposes

17  of the first-filed rule.  *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980,

18  987 (N.D. Cal. 2011) (quoting *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir.

19  1988)) ("In all cases of federal concurrent jurisdiction, the court which first has

20  possession of the ***subject*** must decide it.") (emphasis added)).

21      **Neither the plaintiffs nor the issues in *Braxton* and *Williams* are**

22  **substantially similar.**  Wells Fargo is simply wrong to say that the classes are

23  overlapping because they involve Black applicants for credit.  The class of

24  refinancing plaintiffs in *Braxton* is not the same as the vaguely defined class of

25  credit plaintiffs in *Williams*.  Indeed, because *Braxton* involves plaintiffs who

26  already had a home loan and sought to refinance that home loan at then-prevailing

27  interest rates, they are differently situated than the *Williams* plaintiffs who had not

28  yet obtained a mortgage.  This is not sufficient similarity for purposes of the first-

filed rule.  In *Martin v. Medicredit, Inc.*, 2016 WL 6696068, at *4 (E.D. Mo. Nov. 15, 2016), the court declined to apply the first-filed rule in proposed class actions involving the Telephone Consumer Protection Act where, as here, there were "significant differences" in the putative class descriptions in the two cases.  Even recognizing that "[t]he class descriptions do overlap in part as both involve a nationwide class of individuals whose cellular numbers were called," the court held that there were "several distinctions between the two putative classes," including that in one case the class definition indicated where class members' telephone numbers were obtained and in the other case the class definitions included a subclass concerning debt collection calls.  *Id.* at *4.  Here, the *Braxton* case class definition describes class members whose claims are limited to discriminations in refinancing, and includes related subclasses, while the *Williams* class definition contains no such limitations.

The court in *Martin* also emphasized that, as here, the putative classes in the underlying cases had not been certified.  *Id.* at *5.  There, as here, plaintiffs had not moved for class certification.  *Id.*  And there, as here, the defendant indicated it would oppose class certification in the allegedly first-filed case, which "militate[d] against the application of the 'first-to-file' rule.  *Id.*  Wells Fargo Defendants' Answers to Plaintiffs' Amended Class Action Complaint in *Williams* affirmatively announce Wells Fargo's intention to oppose class certification in *Williams*, repeatedly stating in both answers that Wells Fargo "specifically denies that Plaintiffs have adequately defined the class of persons upon whose behalf they purport to bring this action, denies that Plaintiffs have or can satisfy the Rule 23 class action requirements, and denies that nationwide class treatment, or any class treatment, is appropriate."  Dkt. 50 ¶¶ 44-51 & Dkt. 51 ¶¶ 44-51.  Given that Wells Fargo opposes class certification in *Williams*, the putative class in *Williams* cannot be considered similar to the putative class in *Braxton*, and the elements of the first-filed rule are not satisfied.

Similarly, the fact that the putative class in *Williams* could be read to subsume the *Braxton* refinancing class does not mandate the application of the first-filed rule. The court in *Riley v. General Motors,* LLC, 2022 WL 787871 at *4 (S.D. Ohio Mar. 15, 2022), declined to apply the first-filed rule even when it "seem[s] that all of the putative Plaintiffs in this case are subsumed in the" earlier filed case.  Specifically, in *Riley*, the latter-filed case included specific products not included in the earlier case, even though the earlier case had a nationwide geographic scope while the latter case covered only Ohio.  *Id.*  Here too, *Braxton* centers on refinancing products specifically listed in the class definitions that are not listed in the *Williams* class definitions.  *See also Cardenas v. Toyota Motor Corp.*, 2019 WL 4705843, at *3 (S.D. Fla. September 26, 2019) (declining to apply first-filed rule because the parties were not similar when the class in the later-filed case covered products not included in the class definitions in the earlier-filed case).

Nor are the issues in *Braxton* and *Williams* sufficiently similar for purposes of the first-filed rule.  "[A] court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it," that is, one that is "materially on all fours with the other" having "such an identity that a determination in one action leaves little or nothing to be determined in the other." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997); *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 623 n.5 (E.D. Cal. 2017) (where "issues are dissimilar … [the] court need not defer to the forum of the first-filed suit").  That is not the case here: *Braxton* is a narrowly-targeted claim alleging discrimination in the refinance processes of Wells Fargo; *Williams*, on the other hand, alleges vaguely-defined discrimination in Wells Fargo's credit practices more generally.  A determination in *Williams* will not leave "little or nothing" to be determined in *Braxton* because there is *no* overlap between the two suits prior to the *Williams* amendment: this case dealt solely with refinancing and *Williams* dealt solely with mortgage origination (and did not even mention refinancing).  The *Braxton*

PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

Complaint relays information gleaned from numerous confidential witnesses, explains in-depth the algorithm that Wells Fargo uses to screen refinancing applications (including how race is incorporated into the algorithm), and expounds on statistical analysis showing the vast disparity in Wells Fargo's treatment of Black homeowners.  *Williams* makes none of these allegations. Thus, a determination by the Court resolving questions raised in *Williams* would do nothing to resolve the questions in *Braxton* relating to refinancing, despite any overlap in the underlying legal claims.  *See Riley*, 2022 WL 787871 (declining to apply the first-filed rule in part because "the first action filed [did not] have such an identity with the second that this Court would have little or nothing to do once the first case is concluded.")  Given the gulf between the factual allegations in *Williams* and in *Braxton*, the cases are not substantially similar for the purposes of the first-filed rule.  And given the differing class definitions and Wells Fargo's opposition to class certification in *Williams*, the parties in the two cases are not substantially similar.

**Dismissing *Braxton* based on the first-filed rule will not increase efficiency.**  Wells Fargo next argues that a first-filed dismissal of *Braxton* is appropriate to preserve "judicial economy" and avoid "the risk of inconsistent judgments."  Mot., at 10.  Not so.  Wells Fargo fails to acknowledge that preservation of judicial economy and the risk of inconsistent judgments are not factors when, as here, the cases are before the same judge (and are not substantially similar).  *Lantiq N. Am., Inc. v. Ralink Tech. Corp.*, 2011 WL 2600747, at *9 (N.D. Cal. June 30, 2011); *Green Tree Servicing, L.L.C. v. Clayton*, 689 F. App'x 363, 368 (5th Cir. 2017) ("we have never applied the first-to-file rule to two cases pending before the same judge."); *Sheehy v. Santa Clara Valley Transportation Auth.*, 2014 WL 2526968, at *2, n.15 (N.D. Cal. June 4, 2014) (when the cases are pending before the same judge, "the concerns justifying application of the rule-comity, efficiency, and uniformity—are nonexistent or greatly reduced").  "The first-to-file rule is aimed at avoiding both conflicting rulings on similar issues and duplicative

rulings.  But when the same judge is deciding both cases, there is no danger of conflicting rulings.  And it increases, rather than diminishes, judicial economy to allow a district court judge to choose which of two pending cases to rule on first." *Green Tree*, 689 F. App'x at 368.  This Court is perfectly capable of presiding over both *Braxton* and *Williams* and, when necessary, prioritizing rulings in one case over another.  And the possibility of conflicting rulings is not present because the cases center on different subjects: refinancing in *Braxton* versus origination in *Williams*. In fact, the vast majority of California federal courts refuse to apply ***the first to file rule to cases pending before the same judge***.[3]

In addition, the California state law claims in *Braxton* cannot be addressed within *Williams*, which does not assert state law claims.  In cases involving multiple overlapping class actions, courts have been "persuaded that the equities … tip in favor of an exception to the first-to-file rule" where, in a second case, as here, "plaintiff brings additional theories of recovery," including "relief under California state law." *Adoma v. Univ. of Phoenix, Inc*., 711 F. Supp. 2d 1142, 1150 (E.D. Cal. 2010); *Gampala v. Dep't of Homeland Sec.*, 2018 WL 4680182, at *5 (N.D. Cal. Sept. 28, 2018) (same).  The California state law claims in *Braxton* "demonstrate[ ]

---

[3] *Automated Logic Contracting Servs., Inc. v. Sprig Elec. Co*., 2018 WL 984857, at *2 (N.D. Cal. Feb. 20, 2018); *Lantiq*, 2011 WL 2600747, at *9, *Sheehy*, 2014 WL 2526968, at *2; *Biosite, Inc. v. XOMA Ltd*., 168 F. Supp. 2d 1161, 1164 (N.D. Cal. 2001); *Amavizca v. Nutra Mfg., LLC*, 2020 WL 8837145, at *3 (C.D. Cal. Oct. 20, 2020); *Levay Brown v. AARP, Inc*., 2018 WL 5794456, at *7 (C.D. Cal. Nov. 2, 2018); *Amezquita v. Target Corp*., 2018 WL 6164293, at *3 (C.D. Cal. July 9, 2018); *Beil v. Toyota Motor Sales, USA, Inc*., 2017 WL 10562859, at *3 (C.D. Cal. Dec. 4, 2017); *Henderson v. JPMorgan Chase Bank*, 2011 WL 4056004, at *2 (C.D. Cal. Sept. 13, 2011); *Moore v. Roadway Express, Inc*., 2009 WL 10670954, at *4 (C.D. Cal. Oct. 7, 2009); *Andreoli v. Youngevity Int'l, Inc*., 2018 WL 1470264, at *2 (S.D. Cal. Mar. 23, 2018); *Emergy Inc. v. Better Meat Co*., 2022 WL 1665221, at *1 (E.D. Cal. May 25, 2022); *Bowles v. Leprino Foods Co*., 2020 WL 3256845, at *3 (E.D. Cal. June 16, 2020); *Rodriguez v. Taco Bell Corp*., 2013 WL 5877788, at *3 (E.D. Cal. Oct. 30, 2013).

that judicial resources will not be significantly conserved" by applying the first-filed rule. *Adoma*, 711 F.2d at 1150; *Gardner v. GC Servs., LP*, 2010 WL 2721271, at *7 (S.D. Cal. July 6, 2010) ("in light of the distinct California state claims raised and relief requested in the *Gardner* action, the application of the 'first to file' rule would not result in any significant conservation of judicial resources.").

### C.   Wells Fargo's Motion is Clearly Aimed at Eliminating the Only Case Whose Class is Sufficiently Well-Defined to be Certified as a Class

Lastly, granting Wells Fargo's motion to dismiss contravenes the interests of the putative class in *Braxton* and, indeed, the interests of justice.  No doubt recognizing it is far easier to defeat an overly broad class that is too indefinite to achieve certification, Wells Fargo has seemingly elected to temporarily join forces with the *Williams* Plaintiffs to eliminate a precisely-defined class of plaintiffs whose likelihood of certification far exceeds the broad class defined in *Williams*.  Unlike the class in *Williams*, which is not limited in time and includes all "Black and/or African American applicants or borrowers who applied for, received, or maintained credit from Defendants related to residential real estate and who were subject to discrimination by Defendants due to their race," (Ellis Decl., Ex. D ¶ 44), the class in *Braxton* is sufficiently well-defined to be certified as a class; it is limited in time (January 1, 2018 through the present) and is focused on only Black homeowners who submitted an application to refinance their home mortgage Ellis Decl., Ex. C ¶ 146.  *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("a class definition should be precise, objective, and presently ascertainable") (citing Manual for Complex Litigation, Third § 30.14, at 217 (1995)).  Further, in addition to being overbroad, the *Williams* class is not ascertainable because it is an impermissible "fail safe" class. *Dodd–Owens v. Kyphon, Inc.*, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (striking the words "who have experienced gender

1   discrimination" from a class definition on the ground that it created a "fail-

2   safe class").

3       Wells Fargo's ostensible belief that the putative class set forth in the *Williams*

4   original complaint encompassed the *Braxton* proposed class and subclasses is belied

5   by its actions prior to the filing of the *Williams* amended complaint.  In fact, it was

6   only on May 25, 2022—more than two months after the filing of *Braxton* complaint

7   and more than one month after *Williams* was amended adding its barebones

8   allegations related to refinancing—that Wells Fargo stated, for the first time, that it

9   viewed *Braxton* and *Williams* as related.  Ellis Decl., Ex. G.

10      Following a meet and confer on May 27, 2022, in which Wells Fargo

11  announced its intention to file a motion relating *Braxton* to *Williams*, Wells Fargo—

12  after refusing to extend Plaintiffs the courtesy of one business day to assess the

13  relatedness of the cases—filed the motion later that same day (despite the fact that

14  the *Braxton* counsel had twice granted Wells Fargo extensions to respond to the

15  complaints).  *Id.*, ¶ 9.  Ellis Decl., ¶¶ 6 & 8, Exs. E & F.

16      The reason for Wells Fargo's urgency in filing the motion and its refusal to

17  extend a common professional courtesy soon became apparent.  During the time in

18  which Wells Fargo sought extensions to respond to the operative complaint in this

19  case—which the *Braxton* Plaintiffs agreed to in good faith—and delayed Plaintiffs'

20  efforts to schedule the required Rule 26 meet and confer, (Ellis Decl., ¶ 11.), Wells

21  Fargo was concurrently engaging in discussions with the *Williams* Plaintiffs in an

22  effort to determine which case it sought to advance.  On May 31, 2022, in its

23  Response to Administrative Motion to Consider Whether Cases Should be Related,

24  the *Williams* Plaintiff disclosed that "Counsel for Plaintiffs and Wells Fargo in this

25  case have agreed to meet to discuss Plaintiffs' statistical findings on June 7, 2022 in

26  Philadelphia."  Dkt. 34-1 at 3.  While the *Braxton* Plaintiffs were not privy to those

27  discussions, what is obvious is that a mere six days after this meeting, Wells Fargo

28

PLAINTIFFS AARON BRAXTON, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, STAY PROCEEDINGS

filed a motion to dismiss in the instant case and an Answer (but not a motion to dismiss) in the *Williams* case.

If Wells Fargo's motion is granted, Wells Fargo would proceed against a putative class action with an overbroad class definition that is unlikely to be certified, while the *Williams* Plaintiffs jump to the front of the line and get to be considered the lead plaintiffs of a nationwide class action against one of the "Big Four Banks" in the United States.  On the other hand, the refinance class—a well-defined group of individuals that have already endured years of discrimination—will be subsumed by the much larger putative class, and their interests will be set aside as the *Williams* Plaintiffs struggle to certify a class that purports to encompass every Black homeowner who sought any time of residential-related loan from Wells Fargo over an unlimited period of time, or, worse yet, reach an easy (and perhaps already-negotiated) settlement with Wells Fargo and seek to certify a settlement class allowing Wells Fargo to evade meaningful responsibility for its discrimination with respect to refinancing.  Given that the *Braxton* case is truly the first-filed case focused exclusively on Wells Fargo's discrimination in the refinancing process, and Wells Fargo's genuine motivation in advancing the *Williams* case is to eliminate a precisely-defined class of plaintiffs that can be certified and who have been harmed at a breathtaking rate, the Court should neither stay nor dismiss the *Braxton* case.

## IV.    **CONCLUSION**

Wells Fargo's motion should be denied in its entirety.

1  DATED:  June 27, 2022

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

By: _____/s/ Dennis S. Ellis_____
     Dennis S. Ellis (SBN 178196)
     Trent B. Copeland (SBN 136890)
     Ryan Q. Keech (SBN 280306)
     Stefan Bogdanovich (SBN 324525)
     2121 Avenue of the Stars, Suite 2800
     Los Angeles, California 90067
     Telephone: (310) 274-7100
     Facsimile: (310) 275-5697
     Email:  dellis@egcfirm.com
             tcopeland@egcfirm.com
             rkeech@egcfirm.com
             sbogdanovich@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

     Noah S. Helpern (SBN 254023)
     Milin Chun (SBN 262674)
     801 South Figueroa Street, Suite 2000
     Los Angeles, California 90017
     Telephone: (213) 725-9800
     Facsimile: (213) 725-9808
     Email:  nhelpern@egcfirm.com
             mchun@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

     Joseph N. Kiefer (pro hac vice
     forthcoming) (NY Bar No. 5345657)
     157 West 57th Street, Suite 28 S
     New York, New York 10019
     Telephone: (212) 413-2600
     Facsimile: (212) 413-2629
     Email:  ikiefer@egcfirm.com

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan Brown, Paul Martin and all others similarly situated

DATED:  June 27, 2022

FRANK, SIMS & STOLPER LLP

     Jason M. Frank (SBN 190957)
     Scott H. Sims (SBN 234148)
     Andrew D. Stolper (SBN 205462)

By: _____/s/ Jason Frank_____
     Jason Frank

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan Brown, Paul Martin and all others similarly situated