ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Dennis S. Ellis (State Bar No. 178196)
  dellis@egcfirm.com
Trent Copeland (State Bar No. 136890)
  tcopeland@egcfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

FRANK SIMS & STOLPER LLP
Jason Frank (State Bar No. 190957)
  jfrank@lawfss.com
Scott H. Sims (State Bar No. 234148)
  ssims@lawfss.com
Andrew D. Stolper (State Bar No. 205462)
  astolper@lawfss.com
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone: (949) 210-2400
Facsimile: (949) 201-2405

(Additional Counsel on Signature Page)

Attorneys for Plaintiffs Aaron Braxton, Gia Gray,
Bryan Brown, Paul Martin, on behalf of
themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation, <br><br> Defendants. | Case No. 3:22-cv-01748-JD <br><br> Honorable James Donato <br><br> **NOTICE OF LODGING OF THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC (re *EBO v. WELLS FARGO BANK*)** <br><br> Judge:   Hon. James Donato <br> Date:   October 20, 2022 <br> Time:   10:00 a.m. <br> Location:   United States Courthouse <br>      450 Golden Avenue. Ctrm 11 <br>      San Francisco, CA 94102 <br> Trial Date: None set. |

TO THE HONORABLE JUDGE JAMES DONATO, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 2, 2022, pursuant to Rules 42(a)(2) and 23(g)(3) of the Federal Rules of Civil Procedure, **The Braxton Plaintiff's Opposition to the Motion to Consolidate and Appoint Interim Lead Counsel Filed by Milberg Coleman Bryson Phillips Grossman PLLC** was filed in the case of ***Ifeomo Ebo, et al. vs. Wells Fargo Bank, N.A., Wells Fargo & Company***, **Northern District of California, Case No. 3:22-cv-02535-JD**.

A true and correct copy of the Opposition to Wells Fargo Bank, N.A. and Wells Fargo & Company's Motion to Consolidate is hereby lodged with this Court as **Exhibit A** to this Notice of Lodging.


DATED:  September 2, 2022

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

By:  /s/ Dennis S. Ellis
　　　Dennis S. Ellis (SBN 178196)
　　　Trent Copeland (SBN 136890)
　　　Ryan Q. Keech (SBN 280306)
　　　Stefan Bogdanovich (SBN 324525)
　　　2121 Avenue of the Stars, 30th Floor
　　　Los Angeles, California 90067
　　　Telephone: (310) 274-7100
　　　Facsimile: (310) 275-5697
　　　Email:  dellis@egcfirm.com
　　　　　　　tcopeland@egcfirm.com
　　　　　　　rkeech@egcfirm.com
　　　　　　　sbogdanovich@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
　　　Noah S. Helpern (SBN 254023)
　　　Milin Chun (SBN 262674)
　　　801 South Figueroa Street, Suite 2000
　　　Los Angeles, California 90017
　　　Telephone: (213) 725-9800
　　　Facsimile: (213) 725-9808
　　　Email:  nhelpern@egcfirm.com
　　　　　　　mchun@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Joseph N. Kiefer (*pro hac vice forthcoming*) (NY
Bar No. 5345657)
157 West 57th Street, Suite 28 S
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
Email:  jkiefer@egcfirm.com

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

DATED:  September 2, 2022    FRANK, SIMS & STOLPER LLP
Jason M. Frank (SBN 190957)
Scott H. Sims (SBN 234148)
Andrew D. Stolper (SBN 205462)

By:  _____/s/ Jason Frank_____
        Jason Frank
Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTORNEY ATTESTATION

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

*/s/ Dennis S. Ellis*

# EXHIBIT A

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Dennis S. Ellis (State Bar No. 178196)
    dellis@egcfirm.com
Trent B. Copeland (State Bar No. 136890)
    tcopeland@egcfirm.com
Ryan Q. Keech (State Bar No. 280306)
    rkeech@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697


FRANK SIMS & STOLPER LLP
Jason Frank (State Bar No. 190957)
    jfrank@lawfss.com
Scott H. Sims (State Bar No. 234148)
    ssims@lawfss.com
Andrew D. Stolper (State Bar No. 205462)
    astolper@lawfss.com
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone: (949) 210-2400
Facsimile: (949) 201-2405

(Additional Counsel on Signature Page)

Attorneys for Plaintiffs Aaron Braxton, Gia Gray,
Bryan Brown, Paul Martin, on behalf of
themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated, | Case No. 3:22-cv-01748-JD |
| | Honorable James Donato |
| Plaintiffs, | **THE *BRAXTON* PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC** |
| vs. | |
| WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation, | Date:      October 20, 2022<br>Time:      10:00 a.m.<br>Location :   Courtroom 11<br>            United States Courthouse<br>            450 Golden Avenue<br>            San Francisco, CA |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ IV

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      PRELIMINARY STATEMENT ......................................................................................1

II.     BACKGROUND ...........................................................................................................3

    A.      Procedural History .............................................................................................3

        1.      The Complaints ............................................................................3

        2.      Wells Fargo's Motion to Dismiss *Braxton* .....................................5

    B.      The Advanced *Braxton* Amended Complaint and the *Ebo*, *Pope*, and *Thomas* Complaints ..........................................................................................6

III.    LEGAL STANDARDS ...................................................................................................8

    A.      MOTION TO CONSOLIDATE ..........................................................................8

    B.      Motion to Appoint Interim Lead Counsel ...........................................................9

IV.     ARGUMENT ..............................................................................................................10

    A.      Consolidation Would Prejudice the *Braxton* Class by Diluting Its Claims and Slowing Its Substantial Progress ................................................................10

        1.      The *Braxton* Class Will Be Prejudiced by the Dilution of Its Claims..........10

        2.      The *Braxton* Class Will Be Prejudiced by the Delay Consolidation Would Cause .......................................................................................11

        3.      The Classes Across the Cases Are Different .................................................11

        4.      Any Convenience and Economy from Consolidation Will Not Override the Prejudice to the *Braxton* Class ...................................................12

    B.      The *Braxton* Firms Must Lead the *Braxton* Class ...........................................12

        1.      The *Braxton* Firms Filed the First and Only Action on Behalf of Black Refinancing Applicants ...........................................................................12

        2.      The *Braxton* Complaint is the Most Comprehensive Pleading ...................13

        3.      The *Braxton* Firms Are Experienced in Both Prosecuting *and* Defending Class Actions .............................................................................15

        4.      The *Braxton* Firms Are Willing to Commit Significant Resources to This Case ...................................................................................................15

V.      CONCLUSION ................................................................................................15

ATTORNEY ATTESTATION ...................................................................................17

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Anderson Living Tr. v. WPX Energy Prod., LLC,*
    297 F.R.D. 622 (D.N.M. 2014) ..................................................................................3, 12

4

5

*Azpeitia v. Tesoro Ref. & Mktg. Co. LLC,*
    No. 17-cv-00123-JST, 2017 WL 4071368 (N.D. Cal. Sept. 14, 2017)........................9

6

*Cadena v. Am. Honda Motor Co.,*
    No. CV-18-4007-MWF (PJWx), 2020 WL 3107798 (C.D.Cal. June 10, 2020) .............3, 13, 14

7

8

*Campbell v. PricewaterhouseCoopers,*
    No. CIV S-06-2376LKK/GGH, 2008 WL 3836972 (E.D. Cal. Aug. 14, 2008)................ *passim*

9

*Case v. Merlin Entm'ts Grp. U.S. Holdings Inc.,*
    No. 20cv01049 JAH-MSB, 2021 WL 1195813 (S.D.Cal. Mar. 30, 2021) ............................13

10

11

*Cook v. AT&T Mobility, LLC,*
    No. CV10-8870 R (OPx)) U.S.Dist.LEXIS 168372 (C.D.Cal. Jan. 7, 2011) ..............................8

12

13

*El Bannan v. Yonts,*
    No. 5:06–cv–173–R, 2007 WL 1199432 (W.D. Ky. April 20, 2007)........................................2

14

*In re Apple Inc. S'holder Derivative Litig.,*
    No. 19-cv-05153-YGR, 2020 WL 3507426 (N.D. Cal. June 29, 2020) ...................................12

15

16

*In re Cree, Inc. Sec. Litig.,*
    219 F.R.D. 369 (M.D.N.C. 2003) ...........................................................................................15

17

18

*In re GSE Bonds Antitrust Litig.,*
    377 F. Supp. 3d 437 (S.D.N.Y. 2019) ....................................................................................13

19

*In re Seagate Tech. LLC Litig.,*
    No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016)....................................9

20

21

*Jackson v. City & Cty. of San Francisco,*
    No. C 09-2143 RS, 2010 WL 11582918 (N.D. Cal. Dec. 16, 2010) .......................................10

22

23

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir.1990).............................................................................................3, 9

24

*LeBeau v. U.S.,*
    222 F.R.D. 613 (D.S.D. 2004) ...............................................................................................15

25

26

*Lopez v. Liberty Mut. Ins. Co.,*
    No. . CV 14-05576 BRO (JCx), 2014 WL 12853283 (C.D. Cal. Oct. 24, 2014) ....................11

27

*Lowery v. Spotify USA Inc.,*
    CV 15-09929-BRO (RAOx), 2016 WL 6818756 (C.D. Cal. May 23, 2016) ..........................13

28

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

*Morgan v. Napolitano*,
 No. CIV. S-09-2649 LKK, 2012 WL 4755034 (E.D. Cal. Oct. 4, 2012) ..................................9

*Potzner v. Tommie Copper Inc.*,
 2016 WL 304746 (S.D.N.Y. Jan. 4, 2016) ...............................................................................13

*Robbins v. Phillips 66 Co.*,
 18-cv-00292-RS, 2019 WL 13119275 (N.D. Cal. Aug. 8, 2019) ..........................................12

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
 720 F. Supp. 805 (N.D. Cal. 1989) .............................................................................................2

**RULES**

Fed. R. Civ. P. 23(g)........................................................................................................................15

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................................9, 10

Fed. R. Civ. P. 23(g)(1)(B) .............................................................................................................10

Fed. R. Civ. P. 23(g)(2)...................................................................................................................15

Fed. R. Civ. P. 23(g)(3).....................................................................................................................9

Fed. R. Civ. P. 26 ............................................................................................................................11

**OTHER AUTHORITIES**

*Appointment of Class Counsel*, 7B Fed. Prac. & Proc. Civ. § 1802.3 (3d ed.)...............................10

Manual for Complex Litigation (Fourth) § 21.11 (2004)...................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Plaintiffs Aaron Braxton, Gia Gray, Bryan Brown and Paul Martin (the "*Braxton* Plaintiffs") agree with Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), who serves as counsel in *Ebo*, *Pope*, and *Thomas*[1] that Wells Fargo's treatment of minority refinancing applicants during the COVID-19 pandemic was blatantly discriminatory.  However, the *Braxton* Plaintiffs, who are exclusively Black refinance applicants, agree with the Court that their claims are not (and should not be) "subsumed" in the claims of the other class representative plaintiffs in *Williams*, and likewise in *Ebo, Pope and Thomas*, as well as *Perkins*.[2]  Wells Fargo's discrimination was most pernicious when it came to Black applicants.  The *Braxton* Plaintiffs identified the extreme treatment of Black homeowners when they first prepared their claims against Wells Fargo, and the *Braxton* Plaintiffs' ongoing investigation has only confirmed that Wells Fargo's discrimination of Black homeowners was even more stark than its discrimination of other minority refinancing applicants.  For this reason, the Court should not force the *Braxton* class to merge with classes seeking relief on behalf of all minorities nor, as explained in the *Braxton* Plaintiffs' Opposition to Wells Fargo Bank, N.A. and Wells Fargo & Company's Motion to Consolidate,[3] should the Court force the *Braxton* class into a case involving claims beyond discrimination in refinancing, and should therefore deny the *Ebo*, *Pope*, and *Thomas* plaintiffs' Motion to Consolidate.  Similarly, given the *Braxton* Plaintiffs' considerable development of their case at this preliminary stage (and given the *Braxton* firms' qualifications to lead the class), the

---

[1]  Milberg serves as counsel in *Ebo v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-02535-JD ("*Ebo*"); *Pope v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01793-JD ("*Pope*"); and *Thomas v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01931-JD ("*Thomas*").

[2]  Class counsel in *Williams v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-00990-JD ("*Williams*") and *Perkins v. Wells Fargo, N.A.*, Case No. 3:22-cv-03455-JD ("*Perkins*") likewise seek to consolidate and be appointed as interim lead counsel, just as Milberg does, which is not surprising as each of these cases would be considered later filed with respect to the claims of Black refinancing applicants, as Braxton was the first case to assert such claims.

[3]  Pursuant to the concurrently filed Request for Judicial Notice, the *Braxton* Plaintiffs ask this Court to take judicial notice of Plaintiffs Aaron Braxton et. al's Opposition to Wells Fargo Bank, N.A. and Wells Fargo & Company's Motion to Consolidate, filed on August 26, 2022, in the matter of *Williams v. Wells Fargo*, Case No. 3:22-cv-00990-JD, at Dkt. 70, a true and correct copy of which is attached to the concurrently filed Request for Judicial Notice as Exhibit D, and ask it to consider the points and authorities referenced therein when ruling on this motion.

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

Court should appoint the firms who brought the *Braxton* case interim lead counsel for the limited class of Black homeowners who sought refinancing from Wells Fargo, and accordingly deny the *Ebo*, *Pope*, and *Thomas* plaintiffs' concurrent Motion for Appointment of Interim Lead Counsel.[4]

A motion for consolidation should not be granted when consolidation would impede justice and infringe the interests of the parties. *Campbell v. PricewaterhouseCoopers*, No. CIV S-06-2376LKK/GGH, 2008 WL 3836972, at *3 (E.D. Cal. Aug. 14, 2008) ("Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial"). It is the district court's responsibility to ensure that the parties are not prejudiced by consolidation. *El Bannan v. Yonts,* No. 5:06–cv–173–R, 2007 WL 1199432, at *1 (W.D. Ky. April 20, 2007).

The consequence of consolidating the related actions here is the dilution of *Braxton*'s narrow refinancing claims into broader residential credit claims that, as the *Braxton* Plaintiffs have already demonstrated, would potentially obscure Wells Fargo's established and extensive discrimination against Black homeowners with respect to refinancing. Unlike *Williams* and other cases pending before this Court, *Braxton* is specifically and *solely* about discrimination against Black homeowners in the mortgage refinancing process. Combining the *Braxton* Plaintiffs with other groups of plaintiffs – such as the *Pope* and *Thomas* putative classes, which include all minority applicants, or the *Ebo* class, which includes mortgage origination applicants – could hurt the *Braxton* Plaintiffs' ability to certify their class. The *Braxton* Plaintiffs filed on behalf of only Black homeowners discriminated against in the refinancing process in part because of the ease of certifying their class, and they will be prejudiced if they are denied that opportunity.

The fact remains, as the *Braxton* Plaintiffs illustrated in their opposition to Wells Fargo's motion to consolidate, that consolidation is inappropriate when, as here, concerns of "delay, confusion, and prejudice" outweigh "the interest of judicial convenience." *Southwest Marine,*

---

[4] Also pursuant to the concurrently filed Request for Judicial Notice, the *Braxton* Plaintiffs ask this Court to take judicial notice of Plaintiffs Aaron Braxton et. al.'s Motion for Appointment of Interim Lead Counsel for a Putative Refinancing Class, filed on July 28, 2022 in the matter of *Braxton v. Wells Fargo*, Case No. 4:22-cv-01748-JD, at Dkt. 45, a true and correct copy of which is attached to the concurrently filed Request for Judicial Notice as Exhibit A, as well as the Declarations of Dennis S. Ellis and Jason M. Frank in support of that motion, attached to the Request for Judicial Notice as Exhibits B and C, and ask it to consider the points and authorities referenced therein when ruling on this motion.

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

*Inc. v. Triple A Machine Shop, Inc.,* 720 F. Supp. 805, 807 (N.D. Cal. 1989). Overall, "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Campbell*, 2008 WL 3836972, at *3 (citing *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1484 (2d Cir.1990)). Purported convenience and economy cannot "override the Plaintiffs' autonomy in mastering their own complaints." *Anderson Living Tr. v. WPX Energy Prod., LLC*, 297 F.R.D. 622, 631 (D.N.M. 2014). This is especially true when any efficiencies can be achieved without formal consolidation. *Campbell*, 2008 WL 3836972, at *2-3 ("many of the efficiency gains sought to be achieved by consolidation can also be achieved without consolidation.").

In addition, it would be inappropriate to allow the attorneys who filed the *Ebo*, *Pope*, and *Thomas* cases to usurp control of the *Braxton* case from the firms who initially filed the only claims solely on behalf of Black homeowners (the "*Braxton* Firms"). As noted, the *Braxton* claims have been substantially developed already, and the *Braxton* amended complaint is far more detailed than the complaints (and amended complaints) filed in *Ebo*, *Pope*, and *Thomas*, including relaying information gleaned from numerous confidential informants. *See Cadena v. Am. Honda Motor Co. Inc.*, CV-18-4007-MWF (PJWx), 2020 WL 3107798, at *4 (C.D. Cal. June 9, 2020) (selecting as interim lead counsel the two firms that prepared the most "detailed complaints."). The *Ebo*, *Pope*, and *Thomas* arguments suggesting that their complaints are more detailed (including the argument seeming to suggest that the *Braxton* Firms did not independently review the statistics cited in their complaint) are simply wrong. Overall, taking the *Braxton* case away from the *Braxton* Firms, whose lead counsel and attorneys are uniquely situated to address the discrimination against Black homeowners, would, *inter alia*, prejudice the *Braxton* class by removing the counsel that has singularly promoted the interests of solely Black homeowner refinance applicants since filing the first and only class action on behalf of such applicants.

## II.      BACKGROUND

### A.      Procedural History

#### 1.      The Complaints

On March 18, 2022, Plaintiff Aaron Braxton and the *Braxton* Firms (Ellis George Cipollone O'Brien Annaguey LLP ("EGC") and Frank, Sims, & Stolper LLP ("FSS")) filed the

first putative class action against Wells Fargo on behalf of Black homeowners who had submitted refinance applications to Wells Fargo and were harmed by Wells Fargo's race-based discrimination.  Dkt. 1.[5]  Subsequently, the *Braxton* Plaintiffs filed a First Amended Complaint ("FAC") providing a detailed account of Wells Fargo's refinancing application process, its increased reliance on algorithms, and its CORE automated underwriting system.  Dkt. 14 ¶¶ 70-78.  The *Braxton* allegations demonstrate that Wells Fargo's automated underwriting system was infected with explicit and implicit racial signals (so-called "overlays") that had, as their proximate and likely result, the disparate impact reflected in the statistical analyses discussed in the FAC.  *Id.* at ¶¶ 79-91.  The *Braxton* allegations also include facts learned from interviews with confidential informants describing Wells Fargo's failure to control for discriminatory practices.  *Id.* at ¶¶ 82, 91, 101, 103-05.

There are five additional putative class actions pending in this District:  (1) *Williams v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-0090-JD; (2) *Pope v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01793-JD; (3) *Thomas v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01931-JD; (4) *Ebo v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-02535-JD; and (5) *Perkins, et al. v. Wells Fargo, N.A.*, Case No. 3:22-cv-03455-JD.  The Court has already related all six of these pending actions.

The *Williams* case was originally filed on February 17, 2022, on behalf of a broad class of African Americans who applied for residential real estate loans.  The initial *Williams* complaint made no allegations about refinancing, much less about how Wells Fargo's refinancing practices were specifically designed to discriminate against Black applicants.  After the *Braxton* case was filed, the *Williams* plaintiffs amended their complaint to include scant allegations about discrimination in refinancing but, unlike *Braxton*, the *Williams* plaintiffs continued to seek to represent a class of all African Americans discriminated against with respect to *all* residential real estate loan applications.

As to the four other pending actions, the *Pope* and *Thomas* actions were filed subsequent

---

[5] Unless otherwise noted, citations to "Dkt." refer to docket entries in *Braxton v. Wells Fargo*, Case No. 3:22-cv-01748-JD.

to the *Braxton* action and largely repeated the *Braxton* allegations.  The proposed classes in *Pope* and *Thomas*, while limited to discrimination in refinancing, differ from the *Braxton* class.  *Pope* and *Thomas* seek to represent a class of "all first and second lien Wells Fargo *minority* [not limited to Black] mortgage refinance applicants … whose refinancing applications were discriminatorily denied."  Case No. 3:22-cv-01793, ¶ 34; Case No. 3:22-cv-01931, ¶ 35 (emphasis added).

The *Ebo* and *Perkins* plaintiffs who also filed their lawsuits after *Braxton*, like the *Williams* plaintiffs, seek to represent classes of applicants discriminated against with respect to mortgage loans as well as refinancing.  *Ebo* proposes a class of "[a]ll Black Americans [ ] who submitted applications to obtain or refinance a mortgage loan with respect to residential real property" and suffered from discrimination.  Case No. 3:22-cv-02535, ¶ 50.  *Perkins* proposes a class of all minority applicants who suffered discrimination in financing or refinancing:  "[a]ll Black persons, as well as other racial minorities [who] submitted, or attempted to submit, an application to finance or refinance their home mortgage."  Case No. 3:22-cv-03455, ¶ 56.

On July 28, 2022, the *Braxton* Plaintiffs filed a Motion for Appointment of Interim Counsel for a Putative Refinancing Class.  Dkt. 45 ("*Braxton* Lead Counsel Motion").  As stated in that motion, *Braxton* was the first filed case on behalf of a putative class of Black homeowners discriminated against in the refinancing process, and the *Braxton* Firms have already performed an extensive investigation relating to that specific class, have the experience and resources necessary to prosecute the case on behalf of Black homeowners, and will be prejudiced if lumped into a broader class of origination plaintiffs and/or non-Black applicants.  *Id.* at 1.  The *Braxton* Firms do not seek to be appointed counsel for prospective borrowers harmed outside the refinancing process and do not seek to be appointed counsel for non-Black homeowners.  *Id.*

### 2.   <u>Wells Fargo's Motion to Dismiss *Braxton*</u>

On June 13, 2022, Wells Fargo moved to dismiss the *Braxton* complaint under the first-filed rule because, according to Wells Fargo, the narrow *Braxton* refinancing class was subsumed by the broader *Williams* class.  Dkt. 39.  Notably, Wells Fargo did not move to dismiss any of the other related cases.  The *Braxton* Plaintiffs opposed, and on July 19, 2022, the Court denied Wells Fargo's motion to dismiss, explaining that

[t]he *Williams* action involves a proposed class of African American applicants who applied for, received, or maintained credit from Wells Fargo related to residential real estate, while the *Braxton* action involves a proposed class of African American homeowners who submitted applications to refinance their home mortgages. ***The cases are sufficiently similar for purposes of relation under the District's local rules, but not so similar that Braxton is subsumed in Williams.***

Dkt. 44 (emphasis added).

**B.**     <u>The Advanced *Braxton* Amended Complaint and the *Ebo, Pope,* and *Thomas* Complaints</u>

The *Braxton* Plaintiffs intentionally brought their case *only* on behalf of Black homeowners who sought to refinance existing loans through Wells Fargo. The *Braxton* Plaintiffs' continuing development of their case has only cemented their position that their class was uniquely affected by Wells Fargo's discriminatory practices. The facts reflected in the *Braxton* FAC demonstrate that the *Braxton* Plaintiffs are already pursuing their claims on a faster timeline than remaining cases Wells Fargo seeks to combine with *Braxton*.

The *Braxton* Plaintiffs, in their 198 paragraph First Amended Complaint, explain Wells Fargo's COVID 19-era refinancing application process in detail, beginning with Wells Fargo's steps gathering geographic, financial, and demographic data into Wells Fargo's Form 1003 through a platform developed by Blend Labs, including details about specific in-person efforts to gather information on applicants that could identify them as Black homeowners. FAC, ¶¶ 70-77. Next, the *Braxton* Plaintiffs explain, the information that has been gathered, including the data reflecting racial judgments, is inputted into Wells Fargo's "CORE" automated underwriting system. *Id.* ¶ 78. According to the confidential informants the *Braxton* Plaintiffs spoke to, CORE then classifies applicants into four categories, two of which automatically approved the loan, one of which referred the application to manual underwriting, and one of which automatically denied the application. *Id.* Black refinancing applicants were consistently relegated to the latter categories. *Id.* Further, again according to confidential informants, Wells Fargo severely understaffed the underwriting departments designed to flag potentially discriminatory outcomes, even going so far as to announce internally a decision to increasingly rely on the automated underwriting system. *Id.* ¶ 82.

Underlying that automated underwriting system, the *Braxton* Plaintiffs' investigation shows, were "overlays" that served to single-out refinancing applications from Black homeowners. *Id.* ¶¶ 83-91.  These overlays included geographic indicators, used to identify borrowers with property in Black-majority neighborhoods and classify them as lending risks, *id.* ¶ 84; post-closing liquidity requirements, which Wells Fargo dramatically increased during the pandemic knowing that Black Americans typically hold less than one-third the liquid assets as White Americans, *id.* ¶¶ 85-86; racially biased appraisals, which Wells Fargo plugged into its automated underwriting system without making any adjustment for the well-known disparity between the appraisal values of Black-owned properties as compared to equivalent White-owned properties, *id.* ¶¶ 89-90; and increased FICO requirements which, according to a confidential informant, Wells Fargo moved its minimum requirement from 600 to 620, removing four times as many Black applicants as White applicants from consideration.  *Id.* ¶ 91.  The *Braxton* FAC also detailed the pernicious demographic indicators overlayed into the Wells Fargo algorithm.  The overlays use Bayesian Improved Surname Geocoding and other advanced statistical measures to estimate the likelihood that an individual is a Black American given their surname and location. The FAC relays information from responsible employees at Wells Fargo, even listing the specific equations involved.  *Id.* ¶¶ 87-88.

Finally, the *Braxton* FAC explains how these practices at Wells Fargo led to discriminatory results against Black homeowners in the refinancing process, noting that the underwriters with supposed oversight of the process were systematically disincentivized to check the results of the automatic system, despite Wells Fargo's knowledge of discriminatory outcomes. *Id.* ¶¶ 100-05.  Then the complaint reveals the extent of the impact on Black homeowners as seen through public statistics.  *Id.* ¶¶ 106-19.

The *Williams*, *Pope*, *Thomas*, *Ebo* and *Perkins* complaints do not contain the same detailed factual allegations or support.  *Williams* only mentions "redlining" and does not describe the refinancing application process, does not address the automated underwriting system, does not mention, let alone explain any overlays, and does not address underwriting staffing.  *Perkins* states that Wells Fargo's machine learning processes are responsible for Wells Fargo's discriminatory

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

1   outcomes (repeating many of the allegations made in the original *Braxton* complaint), but it does

2   not detail the information incorporated into the algorithm aside from an applicant's location.

3         *Pope* and *Thomas* also only contain references to "redlining" and provide no explanation

4   of Wells Fargo's underlying practices.  The amended *Pope* complaint is 70 paragraphs long, with

5   33 paragraphs of factual allegations.  *See* Case No. 4:22-cv-01793, Dkt. 6.  The *Pope* complaint

6   pastes charts and cites statements from Bloomberg articles and analysis, as well as an analysis by

7   the Boston Federal Reserve.  *Id.*  The *Pope* complaint includes three paragraphs about the Wells

8   Fargo application process, *id.* at ¶¶ 25-27, and does not describe in detail Wells Fargo's process in

9   collecting and analyzing applicant information.  The only data discussed in the *Pope* complaint is

10   drawn from a Bloomberg analysis.  The *Thomas* complaint is identical to the *Pope* amended

11   complaint in all material respects, again only reflecting data drawn from the Bloomberg analysis.

12   *Compare* Case No. 4:22-cv-01793, Dkt. 6. *with* Case No. 3:22-cv-01931 Dkt. 1.

13         *Ebo* does not address or elaborate on Wells Fargo's automated underwriting system or its

14   discriminatory overlays.  The 84 paragraph *Ebo* complaint, including 49 paragraphs of factual

15   allegations, also draws extensive data from the Bloomberg analysis.  *See* Case No. 3:22-cv-02535,

16   Dkt. 1 at ¶¶ 19-20, and purports to make two allegations based on a review of the data that

17   Bloomberg also reviewed, *id.* at ¶¶ 23-25.  The complaint makes no allegations about Wells

18   Fargo's collecting of information from applicants and makes no allegations about Wells Fargo's

19   algorithm or underwriting practices.

20         In contrast to the *Braxton* amended complaint, there are no allegations in *Williams*, *Pope*,

21   *Thomas*, *Ebo*, or *Perkins* reflecting information gleaned from confidential informants.

22   **III.**    <u>**LEGAL STANDARDS**</u>

23         **A.**    <u>**MOTION TO CONSOLIDATE**</u>

24         Courts have ample discretion to decline to consolidate cases before them, even cases that

25   have some common issues of fact and law.  *Campbell*, 2008 WL 3836972, at *2 (E.D. Cal. Aug.

26   14, 2008).  A party moving for consolidation has the burden of "establishing that the judicial

27   economy and convenience benefits of consolidation outweigh any prejudice that would result from

28   consolidation." *Cook v. AT&T Mobility, LLC*, No. CV10-8870 R (OPx), 2011 WL 13217794, at

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

*1 (C.D. Cal. Jan. 7, 2011).  When assessing a consolidation motion, "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Campbell*, 2008 WL 3836972, at *3 (citing *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1484 (2d Cir.1990)).  Thus,

> [t]he critical question [is] whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Morgan v. Napolitano*, No. CIV. S-09-2649 LKK/DAD, 2012 WL 4755034, at *2 (E.D. Cal. Oct. 4, 2012).

## B.   Motion to Appoint Interim Lead Counsel

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  This rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."  Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.  It recognizes that "it will usually be important for an attorney to take action to prepare for the certification decision" and thus that designation of interim counsel may be necessary due to "rivalry or uncertainty."  *Id.*; *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2017 WL 4071368, at *2 (N.D. Cal. Sept. 14, 2017) (stating that this rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class").  Doing so "clarifies responsibility for protecting the interests of the class during precertification activities."  Manual for Complex Litigation (Fourth) § 21.11 (2004).

"Although Rule 23(g)(3) does not provide a standard for appointment of interim counsel, courts typically look to the factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)."  *In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016).  These are "(1) the work counsel has done in identifying or

1   investigating the potential claims in the action; (2) counsel's experience in handling class actions,

2   other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of

3   the applicable law; and (4) the resources that counsel will commit to representing the class." Fed.

4   R. Civ. P. 23(g)(1)(A). "But these considerations are not exclusive.'" Wright & Miller,

5   *Appointment of Class Counsel*, 7B Fed. Prac. & Proc. Civ. § 1802.3 (3d ed.) The Court also "may

6   consider any other matter pertinent to counsel's ability to fairly and adequately represent the

7   interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

8   **IV.    ARGUMENT**

9       **A.    Consolidation Would Prejudice the *Braxton* Class by Diluting Its Claims and**

10          **Slowing Its Substantial Progress**

11          **1.    The *Braxton* Class Will Be Prejudiced by the Dilution of Its Claims**

12      Consolidation would be unfair and prejudicial to the *Braxton* class because it would

13  significantly dilute the *Braxton* Plaintiffs' allegations and materially hamper their claims,

14  including their ability to obtain class certification. *See Jackson v. City & Cty. of San Francisco*,

15  No. C 09-2143 RS, 2010 WL 11582918, at *1 (N.D. Cal. Dec. 16, 2010) (noting that it would be

16  "unfair" to force a narrower class into a broader class via consolidation).

17      Lumping the *Braxton* class into a far broader and varied class will also undermine the

18  *Braxton* Plaintiffs' ability to certify their class. A large class encompassing all minority

19  refinancing applicants[6] will inevitably present more concerns with respect to commonality, as well

20  as with the adequacy and typicality of the associated class representatives. Indeed, one of the

21  (many) reasons the *Braxton* Plaintiffs filed on behalf of only Black homeowners discriminated

22  against in the refinancing process was the feasibility of certification of that targeted class.

23

24

25

---

26  [6] The Motion seems to suggest that the *Ebo*, *Pope*, and *Thomas* plaintiffs only seek to lead a
    potential refinancing class, but the motion to consolidate suggests that those plaintiffs support
27  consolidation of the refinancing classes and the mortgage origination classes. Pushing the *Braxton*
    class into either broader class and forcing the *Braxton* class to be led by broader class leaders will
28  prejudice the *Braxton* class.

**2.      The *Braxton* Class Will Be Prejudiced by the Delay Consolidation Would Cause**

The *Braxton* class will also be prejudiced by the delays connected to a consolidated matter. The factual development thus far in *Braxton*—incorporating detailed information from confidential witnesses that is absent from any of the other pending cases—exceeds the factual development in other cases Wells Fargo seeks to consolidate.  *See Supra* Section II.B.  The *Ebo*, *Pope*, and *Thomas* amended complaints do not contain a comparable level of detail.

Further, the *Braxton* Plaintiffs have already served document requests on Wells Fargo concerning the refinancing practices and associated underwriting department.  Wells Fargo's response to those requests will be triggered after the parties' Rule 26 meet and confer.  The *Ebo*, *Pope*, and *Thomas* plaintiffs have not issued any document requests to Wells Fargo.

Combining *Braxton* with *Ebo*, *Pope*, and *Thomas* will lead to a halt in the progress already made in *Braxton* while the broader plaintiffs groups in *Ebo*, *Pope*, and *Thomas* plaintiffs attempt to catch up.

**3.      The Classes Across the Cases Are Different**

When putative classes asserted in multiple cases are substantially different, as they are here, consolidation is not appropriate.  *Lopez v. Liberty Mut. Ins. Co.*, No. CV 14-05576 BRO (JCx), 2014 WL 12853283, at *6 (C.D. Cal. Oct. 24, 2014).  In *Lopez*, the court denied plenary consolidation of pending class actions because there was "a legitimate concern regarding the scope of the putative classes in each case."  *Id.*  The court reasoned that if discovery revealed that the classes were in fact different, then the class actions should not be consolidated.  *See id.* (if the classes are "materially distinct" then "it would be prejudicial to Plaintiffs to consolidate these classes").

The potential classes in *Williams, Braxton, Thomas, Ebo and Perkins* are each different. That is an undisputed fact.  The proposed classes in *Pope*, *Thomas*, and *Perkins* all include non-Black minority applicants.  The proposed classes in *Ebo* and *Williams* address mortgage origination in addition to refinancing.  Because there are different class definitions across the six cases, which Wells Fargo cannot explain away, and because the *Braxton* class is the most narrow

1   and progressed class, the Court should not consolidate all of the cases and diminish the *Braxton*

2   claims.

### 4.   Any Convenience and Economy from Consolidation Will Not Override the Prejudice to the *Braxton* Class

5   Consolidation should only be granted when "consolidation would produce substantial

6   tangible efficiencies warranting the Court to override the Plaintiffs' autonomy in mastering their

7   own complaints." *Anderson Living*, 297 F.R.D. at 631 (D.N.M. 2014) (explaining that the

8   efficiencies the moving party claimed would result from consolidation did not outweigh the

9   plaintiffs' right to pursue the case that they had initiated and denying consolidation). The *Ebo*

10  plaintiffs simply state that uncoordinated discovery would be taxing on the plaintiffs and on Wells

11  Fargo, as well as the Court. But "[d]uplicative discovery can be avoided by permitting discovery

12  in each related action to be used in all related actions." *Campbell*, 2008 WL 3836972, at *3;

13  *Anderson Living*, 297 F.R.D. at 631. Thus, "many of the efficiency gains sought to be achieved by

14  consolidation can also be achieved without consolidation," *id.*, and there is no reason for the Court

15  to dilute the *Braxton* claims in order to gain any judicial economy.

### B.   The *Braxton* Firms Must Lead the *Braxton* Class

### 1.   The *Braxton* Firms Filed the First and Only Action on Behalf of Black Refinancing Applicants

19  The *Braxton* Firms were the first to file a class action alleging that Black borrowers were

20  discriminated against in the home loan refinancing process. "Courts have held that the first-to-file

21  factor may be considered an 'objective tie-breaker' in appointing lead counsel" in close cases. *In

22  re Apple Inc. S'holder Derivative Litig.*, No. 19-cv-05153-YGR, 2020 WL 3507426, at *1, n.2

23  (N.D. Cal. June 29, 2020); *see also Robbins v. Phillips 66 Co.*, 18-cv-00292-RS, 2019 WL

24  13119275, at *3 (N.D. Cal. Aug. 8, 2019) ("The only factor that separates the two is that the [firm

25  A] has been involved in this litigation from the outset. [Firm A] filed the [] matter first… they

26  therefore will be appointed as interim class counsel.").

27  In addition, the first-filed *Braxton* complaint spurred the filing of all the subsequent

28  refinancing complaints, further supporting the appropriateness of appointing the *Braxton* Firms as

1  lead counsel.  *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) ("the

2  Scott/Lowey complaint is clearly the template for the great majority of the cases filed since and…

3  weighs in favor of appointment.")

4            **2.**     **The *Braxton* Complaint is the Most Comprehensive Pleading**

5         As reflected by the comprehensive FAC filed in *Braxton*, the *Braxton* Firms have

6  performed substantial work in building a case focusing on Wells Fargo's specific set of policies

7  and practices relating to refinance applications and its discriminatory impact on Black borrowers.

8  In appointing interim lead counsel, courts evaluate "[t]he quality of pleadings [to help] determin[e]

9  counsel's ability and adequacy to represent the interests of the class."  *Case v. Merlin Ents. Grp.*

10  *U.S. Holdings Inc.*, 20cv01049 JAH-MSB, 2021 WL 1195813, at *5 (S.D. Cal. Mar. 30, 2021);

11  *see also Cadena,* 2020 WL 3107798, at *4 (selecting as interim lead counsel the two firms that

12  prepared the most "detailed complaints."); *Potzner v. Tommie Copper Inc.*, 2016 WL 304746, at

13  *1 (S.D.N.Y. Jan. 4, 2016) ("As reflected in the detailed 86–page complaint filed in the Lucero

14  action, Faruqi and Marron have done more work than Cuneo and Lockridge to investigate and

15  identify potential claims in this action.").

16         In preparing its case against Wells Fargo, the *Braxton* Firms interviewed several

17  confidential informants, which revealed (1) that the bank collects "key geographic, financial, and

18  demographic data" and processes them in a CORE algorithm, (2) that Wells Fargo management

19  got real-time data about how its policies were worsening racial disparities, and (3) that, rather than

20  rectifying the problem, management pressured loan officers to increasingly rely on these

21  discriminatory algorithms.  FAC at ¶¶ 70-78, 103-105; *see Lowery v. Spotify USA Inc.*, CV 15-

22  09929-BRO (RAOx) 2016 WL 6818756, at *3 (C.D. Cal. May 23, 2016) (Court selected as

23  interim lead counsel the two firms that "interviewed numerous industry participants to confirm the

24  theory of the case, develop the allegations, and understand the industry.")  This research is

25  reflected in the *Braxton* FAC, which goes into great detail discussing how the algorithm's use of

26  geographic indicators, Bayesian Improved Surname Geocoding (which were used as demographic

27  indicators), post-close liquidity requirements, uncorrected and racially-based home appraisals, and

28  indefensibly high FICO requirements can cause disparate racial disparities and impact.  *Id.* at

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

¶¶ 82-92.  At the heart of the Wells Fargo process challenged in *Braxton* is a new online mortgage application and associated tools and the manner in which Wells Fargo supervised (or failed to supervise) the operation of these data collection and review processes.  *Id*. at ¶¶ 82-91, 100-105.

The *Braxton* Firms also interviewed scores of Black victims and listened to their stories.  *See Cadena*, *supra*,  2020 WL 3107798, at *5 (selecting as interim lead counsel the two firms that "interviewed approximately 80 putative class members as part of an ongoing independent investigation of Plaintiffs' claims.").  The *Braxton* Firms have further consulted with experts with domain expertise in algorithmic modeling and discriminatory biases associated with artificial intelligence and machine learning, consulted with civil rights and housing organizations seeking to support the *Braxton* Plaintiffs, and engaged a highly-regarded damages expert to assist the class on analyzing damages and the value of other non-monetary relief.  *Braxton* Motion for Appointment of Interim Lead Counsel, Ellis Decl., ¶ 8.  The *Braxton* firms' work in this case so far reflects the care and commitment they have devoted, and will continue to devote, to this litigation and the Putative Refinancing Class.

The *Ebo*, *Pope*, and *Thomas* plaintiffs make the inappropriate contention that the initial *Braxton* complaint lacked any analysis of the underlying statistics first reported by Bloomberg.  (Mot. at 15.)  This is completely without merit, as the *Braxton* Firms diligently reviewed and verified all of the information cited in their complaint.  In addition, the *Ebo*, *Pope*, and *Thomas* plaintiffs' complaints, with a potential two paragraph exception, only cite from the same Bloomberg data they contend the *Braxton* Plaintiffs' parrot.  The *Ebo*, *Pope*, and *Thomas* plaintiffs' hypocritical and fabricated criticism of the extensively-developed *Braxton* complaint cannot serve to wrest control of the *Braxton* case from the *Braxton* Firms.

The *Ebo*, *Pope*, and *Thomas* plaintiffs also contend that they enlisted expert consultants dating back to 2021 to develop a statistical analysis and it was only through those experts that the moving plaintiffs filed their complaints.  (Mot. at 14.)  The *Braxton* Firms, of course, have also enlisted expert consultants.  *See Braxton* Plaintiffs' Request For Judicial Notice, Ex. B, Ellis Declaration ¶ 8.  In any event, the *Ebo*, *Pope*, and *Thomas* plaintiffs cite no case law suggesting that purported consultations preceding the filing of a complaint alleviate the operation of the first-

filed rule, or, moreover, that these consultations somehow strengthen the moving plaintiffs' threadbare complaints compared to the detailed and lengthy *Braxton* complaints.

### 3. The *Braxton* Firms Are Experienced in Both Prosecuting *and* Defending Class Actions

Courts applying Rule 23(g) emphasize proposed class counsel's experience and knowledge of the applicable law. *See, e.g., In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003). Courts should consider not only counsel's expertise with the substantive law at issue, but also "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(2).

The *Braxton* Firms are uniquely qualified to serve as interim  counsel for the Putative Refinancing Class.  Consisting largely of former "big firm" partners and associates, the *Braxton* firms have extensive experience both prosecuting *and* defending class actions.  This dual experience makes the *Braxton* Firms uniquely positioned to represent the Putative Refinancing Class because of their greater knowledge of the law and the pitfalls and limitations of their putative plaintiffs' theory.  The *Braxton* Firms' extensive experience is set forth, in detail, in their motion for appointment of lead counsel over the narrow *Braxton* class.   *See Braxton* Request for Judicial Notice, Exhibits A, B, & C.

### 4. The *Braxton* Firms Are Willing to Commit Significant Resources to This Case

Rule 23(g) mandates the Court consider the resources proposed class counsel will commit to the lawsuit's prosecution. *LeBeau v. U.S.,* 222 F.R.D. 613, 618 (D.S.D. 2004) ("In considering the resources that counsel will commit to representing the class, the Court may consider the staff, supplies and professional commitments of that attorney.").  EGC is a bicoastal firm with 57 lawyers total and has partnered with FSS, a class action boutique.  Each firm is willing and able to contribute as many of their lawyers as are needed to this litigation as is necessary and efficient.

## V.   CONCLUSION

For the reasons set forth above, the Court should deny Wells Fargo's motion to consolidate in its entirety.

DATED:  September 2, 2022

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

By:  _____/s/ Dennis S. Ellis_____
      Dennis S. Ellis (SBN 178196)
      Trent B. Copeland (SBN 136890)
      Ryan Q. Keech (SBN 280306)
      Stefan Bogdanovich (SBN 324525)
      2121 Avenue of the Stars, Suite 2800
      Los Angeles, California 90067
      Telephone: (310) 274-7100
      Facsimile: (310) 275-5697
      Email:  dellis@egcfirm.com
               tcopeland@egcfirm.com
               rkeech@egcfirm.com
               sbogdanovich@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
      Noah S. Helpern (SBN 254023)
      Milin Chun (SBN 262674)
      801 South Figueroa Street, Suite 2000
      Los Angeles, California 90017
      Telephone: (213) 725-9800
      Facsimile: (213) 725-9808
      Email:  nhelpern@egcfirm.com
               mchun@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
      Joseph N. Kiefer (admitted *pro hac vice*) (NY Bar
      No. 5345657)
      157 West 57th Street, Suite 28 S
      New York, New York 10019
      Telephone: (212) 413-2600
      Facsimile: (212) 413-2629
      Email:  jkiefer@egcfirm.com

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

DATED:  September 2, 2022

FRANK, SIMS & STOLPER LLP
      Jason M. Frank (SBN 190957)
      Scott H. Sims (SBN 234148)
      Andrew D. Stolper (SBN 205462)

By:  _____/s/ Jason Frank_____
      Jason Frank

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION TO CONSOLIDATE AND APPOINT INTERIM
LEAD COUNSEL FILED BY MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC

**ATTORNEY ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.


*/s/ Dennis S. Ellis*
Dennis S. Ellis